Filed 10/21/22 K.S. v. Superior Court CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| K.S.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF TULARE COUNTY,<br><br>    Respondent;<br><br>TULARE COUNTY HEALTH AND HUMAN SERVICES,<br><br>    Real Party in Interest. | F084752<br><br>(Super. Ct. No. JJV073438C)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ. John P. Bianco, Judge.

K.S., in pro. per., for Petitioner.

No appearance for Respondent.

No response for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and Snauffer, J.

K.S. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rules 8.450–8.452)[1] from the juvenile court's July 27, 2022, dispositional orders, denying her reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(10)[2] (reunification services terminated for a sibling) as to her now six-month-old daughter, J.R., and setting a section 366.26 hearing for November 21, 2022. Mother seeks an order vacating the section 366.26 hearing and returning J.R. to her custody. However, she fails to assert the juvenile court erred. Consequently, we conclude her writ petition fails to comply with the content requirements of rule 8.450 and dismiss the petition as facially inadequate for review.

## PROCEDURAL AND FACTUAL SUMMARY

These dependency proceedings were initiated on April 18, 2022, when the Tulare County Health and Human Services Agency (agency) received a referral regarding newborn J.R. There was concern J.R. was at risk of harm in mother's care because mother had an open family reunification case involving her then seven-year-old son, S.P., and five-year-old son, D.P. (the siblings), stemming from mother's physical abuse of the siblings, substance abuse, domestic violence with Steven R.,[3] J.R.'s father and the siblings' paternal great uncle, and failure to provide adequate food, clothing, shelter and medical care.

---

[1]     Rule references are to California Rules of Court.

[2]     Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]     Steven R. also filed an extraordinary writ in our case No. F084704.

*The Siblings' Case*[4]

The siblings came to the attention of the agency in March 2021 when then six-year-old S.P. missed school. After mother agreed for him to attend school via video conference, he was observed to have a black left eye, swollen shut and purple in color. Another incident was captured on video where the siblings were attempting to stab each other with adult size scissors and mother was heard arguing with her boyfriend.

An agency social worker and law enforcement responded to the family home. The siblings were dirty as if they had not been bathed. The home was also dirty. Mother was under the influence of methamphetamine and arrested, leaving the siblings without a care provider. The siblings' father, Steven P., was incarcerated in Wisconsin. The social worker took the siblings into protective custody and placed them in foster care.

The foster mother reported the siblings had a lot of marks and bruising on their backs, buttocks and legs. She sent the social worker pictures of D.P. with scratches on his hand and face near his eye. She was unable to take any more pictures because he would not allow it. S.P. had a huge bruise/scrape-like mark covering at least half of his buttock, a bruise/scrape-like mark on his arm, a dark red and faded black colored bruise about an inch in size on his upper wrist, and what looked like a cigarette burn on his back with exposed flesh with some scars from what looked like older wounds. Mother denied physically abusing the siblings and claimed they received the marks from falling down.

The siblings stated they were afraid of " 'uncle,' " referring to father. They frequently told the foster mother that " 'Uncle [was] going to whoop them.' " D.P. stated his mother and uncle "whooped" him. They disclosed mother kicked and slapped them and S.P. stated mother used a belt.

---

[4] The juvenile court record in the siblings' case was filed in writ proceedings in our case No. F084368. On our own motion, we take judicial notice of the juvenile court record in case No. F084368. (Evid. Code, § 459.)

Mother said father was an authority figure but that she would never allow him to hit her children. If the siblings did not listen to him, he put them in timeout. Father lived with mother until April 26, 2021, when she forced him to leave her home. She was a victim of domestic violence on April 24, 26 and 29, 2021. She would not say whether she planned to maintain a relationship with him.

Father admitted to " 'whooping' " the siblings when they misbehaved. He described " 'whoopings' " as hitting them " 'a couple times on the butt.' " He denied leaving any marks or bruises. He said mother gave him permission to discipline the siblings.

The agency filed a dependency petition alleging under section 300, subdivision (a) (serious physical harm) that mother physically abused the siblings and under subdivision (b) (failure to protect) that she failed to provide them adequate housing and food, endangered them by abusing substances, and exposed them to domestic violence with father.[5] As to the subdivision (a) count, the department described the siblings as having "numerous current and fading marks and bruises on their backs, buttocks and legs. [D.P.] had scratches on his hand [and] face near his eye. [S.P.] had a large bruise/scrape on his buttocks, on his arm, upper wrist, and knee."

Pictures of the family home and of the siblings' injuries were provided to the juvenile court.

The juvenile court found the allegations true, ordered the siblings removed from mother's custody and ordered her to complete a parenting program, mental health and substance abuse assessments and any recommended treatment, a domestic violence victim's services program and participate in random drug testing.

---

**5** The juvenile court also sustained allegations under section 300, subdivision (b) that Steven P.'s use of methamphetamine and heroin rendered him incapable of providing regular care for the siblings and under subdivision (j) (no provision for support) that he could not arrange for their care because he was incarcerated.

4.

By the 12-month review hearing in May 2022, mother had completed her service plan requirements and given birth to J.R. However, she engaged in domestic violence with father. On April 22, 2022, police responded to a call of spousal abuse at the parents' residence. Mother had bruising on her neck and claimed father choked her. He was angry because she wanted to go home and feed then four-day-old J.R. after finishing their breakfast at a restaurant. Father was not ready to go home and objected to the manner in which she spoke to him. He hit her, punched her in the back of the head and began choking her. He threatened to kill her if she took J.R. away from him. He also grabbed a hammer during the altercation, raised it above his head and threatened to hit her with it. Father claimed mother tried to grab him while he was holding J.R. in his arms. He did not want to continue their relationship and she was using J.R. to be with him. He had to restrain her and put his hands on her chest to hold her down. She kept going at him and he was attempting to stop her. Father was arrested.

Meanwhile, the siblings continued to make statements about physical abuse and other things they witnessed in the family home. After visitation, the siblings were dysregulated and displayed problematic behaviors.

At a contested 12-month review hearing on May 11, 2022, S.P.'s therapist testified S.P. disclosed being hit by mother and father. He was afraid of them. The therapist diagnosed S.P. with posttraumatic stress disorder and testified the physical abuse affected S.P.'s emotional regulation and impulse control. S.P. had also tried to harm himself. D.P.'s therapist invoked the patient-therapist privilege when asked if D.P. disclosed being physically abused.

The juvenile court terminated reunification services and set a section 366.26 hearing for August 31, 2022.[6]

---

[6]     Mother filed a notice of intent to file a writ petition, which was assigned our case No. F084368. However, she did not file a writ petition and the case was dismissed.

*J.R.'s Removal*

On April 25, 2022, a social worker made a home visit, noting it was clean and appropriate and mother had supplies for J.R. Mother did not leave J.R. with father unsupervised and said she thought he would be different with her since J.R. was his child. She denied the siblings were physically abused but acknowledged that she needed to take accountability.

The following day, the social worker took J.R. into protective custody. The agency filed a dependency petition on J.R.'s behalf, alleging one count under section 300, subdivision (a) (serious physical abuse) (count a-1) that father's physical abuse of the siblings placed J.R. at a substantial risk of also suffering serious physical harm. Specifically, the petition alleged that on or near March 31, 2021, the siblings were physically injured while in father's care. They "had numerous current and fading marks and bruises on their backs, buttocks, and legs. [D.P.] had scratches on his hand and face near his eye. [S.P.] had a large bruise/scrape on his buttocks, on his arm, upper wrist, and knee." The petition additionally alleged two counts under section 300, subdivision (b)(1) (failure to protect) (count b-1 as to mother and count b-2 as to father) that the parents exposed J.R. to domestic violence in that on or about April 25, 2022, father choked mother causing a popped blood vessel in her eye and was arrested, and one count under section 300, subdivision (j) (abuse of sibling) as to mother (count j-1) in that the juvenile court found on June 9, 2021, that mother physically abused, and failed to protect S.P. and D.P. from physical abuse and her substance abuse, thus placing J.R at a similar risk of abuse. The petition further alleged that mother's visitation with the siblings was suspended on April 13, 2022. J.R. was placed in a foster home.

*The Detention Hearing*

In its detention report, the agency detailed the specifics of the physical abuse the siblings suffered while in father's care and their fear of him. On April 14, 2021, S.P. disclosed during an interview that his " 'uncle' " was going to hurt him and mother. He

6.

said, " 'Uncle hit mommy and mommy crying.' " He saw " 'mommy hit uncle in teeth and punched him and his teeth fell out.' " He did not disclose who caused the injuries. However, during the course of the case it was discovered the siblings called father, mother's boyfriend, " 'uncle.' "

The siblings were also extremely afraid of mother. They had significant outbursts after visits and continued to make statements of physical abuse and other things they witnessed in the family home. They also made statements about killing their mother and falsifying their abuse in order to avoid contact with her. Mother denied father physically abused the siblings.

On April 28, 2022, the juvenile court appointed counsel for the parents and received the detention report into evidence without objection. The court ordered J.R. detained and ordered the agency to provide mother a mental health assessment, alcohol and drug testing and supervised visits and father substance abuse, mental health and domestic violence assessments, alcohol and drug testing, parenting and supervised visits. A jurisdiction/disposition hearing (combined hearing) was set for June 6, 2022.

*The Jurisdictional Hearing*

On May 11, 2022, the juvenile court terminated mother's reunification services as to the siblings. On May 25, 2022, mother obtained a five-year restraining order against father.

In its report for the combined hearing filed on June 3, 2022, as evidence supporting jurisdiction, the agency reiterated the details previously provided in the detention report regarding the physical injuries sustained by the siblings and their disclosures that father inflicted them. The agency also updated the court on the parents' progress in their court-ordered services. Mother was participating in mental health counseling and a child abuse intervention program. She tested positive for opiates on April 29, 2022, and submitted to a hair follicle test, which revealed levels of cocaine and hydrocodone. However, because the levels were below the cutoff, the testing facility

could not determine whether she used the drugs and when. From a testing and legal standpoint, the facility considered them negative results. Father was scheduled for a mental health assessment and completed an intake for the child abuse intervention program. He completed a substance abuse assessment and it was determined he did not require treatment. However, the following day he tested positive for opiates. He enrolled in family intervention alcohol and other drugs aftercare and agreed to attend the aftercare group sessions monthly and meet with a specialist for an individual session once a month. He was participating in domestic violence services and completed six of the 18 required sessions. He enrolled in a parenting class but was dropped due to excessive no shows.

The agency recommended the juvenile court sustain the allegations and deny father reunification services under section 361.5, subdivision (b)(6) based on the severe physical abuse he inflicted on the siblings. It recommended the court deny mother reunification services under section 361.5, subdivision (b)(10) because her reunification services were terminated in the siblings' case and she failed to subsequently make reasonable efforts to eliminate the domestic violence that necessitated their removal.

The combined hearing, originally set for June 6, 2022, was conducted as a contested jurisdictional hearing on July 6, 2022. Father submitted on count b-2 alleging he placed J.R. at a substantial risk of suffering serious physical harm by engaging in domestic violence with mother on April 25, 2022. The juvenile court found father made a knowing and intelligent waiver as to count b-2. Father's attorney argued there was insufficient evidence to support count a-1 because in the brief summary provided in the agency's report, "[S.P.] did not disclose who caused the injuries." In addition, S.P. was describing domestic violence between mother and father, not physical abuse.

Mother's attorney argued there was insufficient evidence to support the subdivision a-1 count as to father and submitted on count b-1. Mother did not contest that father injured her on April 25, 2022, but her attorney argued she called the police and

8.

obtained a restraining order. As to the physical abuse of the siblings, mother's attorney argued she was unaware father was abusing them.

During his argument, county counsel asked the juvenile court to take judicial notice of the file in the siblings' case. Father's attorney objected, arguing that father was not a party in the siblings' case and not allowed to contest the allegations. Instead of taking judicial notice of the siblings' case file, the court resolved the issue by stating it would consider the information in the social worker's report as to allegations father engaged in domestic violence with mother and physically abused the siblings, noting that father was living with mother when the agency first became involved. As to mother, the court stated it would consider the complete case file, including the reports and prior allegations.

The juvenile court sustained the allegations and set a contested dispositional hearing for July 27, 2022.

*The Dispositional Hearing*

The agency filed an addendum report on July 22, 2022, advising the juvenile court the parents were participating in their court-ordered services but reiterated its recommendation the court deny them reunification services.

Counsel presented their positions at the contested dispositional hearing by argument only. The court admitted into evidence an email mother sent to the social workers detailing the skills she had learned over the prior year that she claimed made her a better parent. She recently obtained a restraining order and developed a safety plan. County counsel argued mother had not taken responsibility for the domestic violence between her and father and the siblings' physical abuse. Mother's attorney pointed out that mother was no longer associated with father. She contacted the police and sought a restraining order. She was also participating in her services. Minor's counsel advised the court he was concerned about mother's relationship with father but stated her mental health therapist reported she attended her therapy sessions and was making progress. Her

9.

drug tests were negative and she completed 16 of the child abuse intervention sessions and made good progress since May 2022. Counsel argued providing her reunification services would serve J.R.'s best interest.

As to father, county counsel argued father's conduct toward the siblings fell within the provisions of section 361.5, subdivision (b)(6) and father had not taken any accountability for it. Given the severity of the abuse the siblings suffered and the emotional damage it caused them, counsel argued for denial of services. Minor's counsel agreed with county counsel. Father's attorney argued the agency failed to meet its burden under section 361.5, subdivision (b)(6) because the siblings did not identify who harmed them and father denied the allegations. He asked the court to provide father reunification services.

The juvenile court clarified that it could consider the siblings' case file in determining the severity of the physical abuse they sustained and in determining whether it would benefit J.R. for father to receive reunification services. The court ordered J.R. removed from parental custody, denied the parents reunification services as recommended and set a section 366.26 hearing.

## DISCUSSION

" 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

When the juvenile court sets a hearing under section 366.26, it must first make certain findings and orders. A parent wishing to challenge the court's findings and orders must do so by filing an extraordinary writ petition. The purpose of the extraordinary writ petition is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).) However, a parent filing an

10.

extraordinary writ petition must explain how the juvenile court was wrong in ruling as it did; in other words, how the court erred.

Rule 8.452, which sets forth the content requirements for an extraordinary writ petition, requires the petitioner to identify the error(s) he or she believes the juvenile court made and to support each alleged error with argument, citation to legal authority, and citation to the appellate record. (Rule 8.452(b).) In keeping with rule 8.452(a)(1), we will liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, mother merely completed the portions of the preprinted Judicial Council form "Petition for Extraordinary Writ" (JV-825) identifying J.R. as the subject of the petition and the date on which the challenged order was made and indicated by checking the appropriate boxes that she wants this court to vacate the section 366.26 hearing and return J.R. to her custody. She did not, however, provide a summary of the facts or explain how the juvenile court erred in ruling as it did. Consequently, we conclude mother's petition fails to comport with the procedural requirements of rule 8.452 and warrants dismissal.

Moreover, we do not independently review the appellate record for possible errors. (*In re Sade C.*, *supra*, 13 Cal.4th at pp. 994, 996.) Even if we did, we would find no error on this record. The juvenile court denied mother reunification services under section 361.5, subdivision (b)(10), which allows the juvenile court to deny a parent reunification services when the court previously terminated reunification services for a sibling or half sibling, and the parent failed to subsequently make reasonable efforts to address the problems leading to removal of the sibling or half sibling.

11.

Once it has been determined one of the bypass provisions applies, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]" ' " (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.) Thus, if the juvenile court finds a provision of section 361.5, subdivision (b), applies, the court "shall not order reunification for [the] parent … unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "The burden is on the parent to … show that reunification would serve the best interests of the child." (*In re William B.*, at p. 1227.)

The juvenile court removed the siblings from mother's custody in part because she engaged in domestic violence with father. The court terminated her reunification services, which included domestic violence counseling, after a year. Although mother completed domestic violence counseling during that year, she continued to engage with father in violent altercations. Consequently, she had not resolved the problem necessitating the siblings' removal and the court was justified in denying her reunification services for J.R. under section 361.5, subdivision (b)(10). Further, mother failed to show that offering her reunification services inured to J.R.'s best interest. Therefore, were we to review this petition on its merits, we would deny it. However, because it is facially inadequate for review, we dismiss it.

### DISPOSITION

The petition for extraordinary writ is dismissed as inadequate under rule 8.452. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).